*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————



KEVIN KEITH,

         *Movant,*

     *v.*

DAVID BOBBY, Warden,

         *Respondent.*

No. 08-3908

Filed: January 13, 2009

Before: BOGGS, Chief Judge; and CLAY and GIBBONS, Circuit Judges.

—————————————

**ORDER**

—————————————

Kevin Keith moves this court for an order authorizing the district court to consider a second or successive habeas corpus petition under 28 U.S.C. § 2254. Because Keith's motion does not make a prima facie showing that "no reasonable factfinder would have found the applicant guilty of the underlying offense," 28 U.S.C. § 2244(b)(2)(B)(ii), we deny the motion.

**I**

Keith was convicted in an Ohio court for a 1994 triple murder and sentenced to death. The state alleged that Keith had been a local drug dealer indicted in connection with a police raid and had killed two women and a child as retaliation against Rudel Chatman, the man suspected of the cooperation that facilitated the raid. Two victims of the shooting, one child and one adult, survived and both testified at Keith's trial. Keith was also connected to the crime by another eyewitness and by circumstantial physical evidence regarding a car he was known to drive and spent gun casings.

1

After exhausting his appeals in the Ohio courts and unsuccessfully moving for post-conviction relief, Keith filed a petition for habeas corpus in federal district court in September 1999, alleging nine grounds for relief. The district court denied relief on all grounds. A certificate of appealability was issued on three questions, each involving the penalty phase. This court affirmed the denial of relief. *Keith v. Mitchell*, 455 F.3d 662, 665 (6th Cir. 2006).

Keith filed his current motion on August 25, 2008, asserting that newly discovered evidence reveals violations of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959). First, Keith argues that there was exculpatory evidence uncovered during the Pharmacy Board's investigation of a string of pharmacy robberies that occurred contemporaneously with the murders. The Board's files included a statement from Rodney Melton – a witness at Keith's trial – to a confidential informant that Melton "had been paid $ 15,000 to cripple the man who was responsible for the raids in Crestline, Ohio last week." The files also contained notes from an interview with Melton's accomplice who corroborated the confidential informant's report that Melton claimed to have been offered payment to murder Rudel Chatman. Second, Keith claims that the nurse (who did not testify at trial) who told the police that a survivor, Richard Warren, identified Keith as the shooter was incorrectly named during police testimony. The detective testified that "Amy Gimmets" called him about Warren's statement when in fact no person (at the time or ever) with that name worked at the hospital. Instead, Keith claims that the nurse on duty who called the detective was actually Amy Wishman. Now that her true identity has been discovered, Wishman claims in an affidavit that she never heard a name from Warren nor did she tell the detective that she did. Keith alleges that these new facts cast sufficient doubt on his conviction that, if proven, no reasonable juror could have found him guilty of the murders.

## II

### A

Keith filed his habeas corpus petition in September 1999, after the 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and therefore the provisions of that Act apply to this case. *See Keith*, 455 F.3d at 665. In order to obtain our permission to file a second or successive petition under that statute, a movant must overcome

its gate-keeping provisions and make a prima facie showing that his application presents a claim that "relies on a new rule of constitutional law, made retroactive . . . by the Supreme Court" or presents facts that "could not have been discovered previously" and tend to show actual innocence. 28 U.S.C. § 2244(b)(2). Because Keith does not make an argument relying on a new rule of law, he must demonstrate that

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements" of § 2244(b)(2). 28 U.S.C. § 2244(b)(3)(C). "Prima facie in this context means simply sufficient allegations of fact together with some documentation that would warrant a fuller exploration in the district court." *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004). Accordingly, "we do not need to find that" Keith's claim compels relief as written, but we still must determine whether his allegations "require a district court to engage in additional analysis in order to ascertain whether but for the constitutional error, no reasonable factfinder would have found [him] guilty." *In re McDonald*, 514 F.3d 539, 547 (6th Cir. 2008). If, "viewed in light of the evidence as a whole," § 2244(b)(2)(B)(ii), Keith's motion does not make such a showing, we may not authorize the district court to hear the habeas application. 28 U.S.C. § 2244(b)(3)(C).

**B**

Keith's two claims of constitutional error – assuming without deciding that the evidence could not have been previously discovered and would, in fact, demonstrate constitutional violations – plainly involve relevant facts, but ones which do not go to the ultimate question of guilt. This showing alone is insufficient to overcome AEDPA's presumption against repeat federal relitigation of state convictions. *See In re Williams*, 330 F.3d 277, 284 (4th Cir. 2003) (denying a motion for a successive application because "[e]vidence of pending charges [against a government witness] could be used for

impeachment, but that alone does not satisfy Williams' burden. And, while [a] recantation supports Williams' assertion of innocence, it does not clearly and convincingly outweigh unimpeached eyewitness testimony . . . .").

Taken at full face value, the evidence that Keith says was not previously discoverable tends to establish two separate propositions. The first is straightforward. The evidence from the Pharmacy Board shows that Rodney Melton contemporaneously claimed that he had a possible motive to commit the murders. He had told several people that he had agreed to "cripple" Rudel Chatman for his suspected participation in providing information that led to the police raid earlier that month. Thus, this could imply a motive to kill people close to Chatman.

Understanding the second proposition requires greater familiarity with the record. Keith's evidence shows that the detective testifying to Warren's initial identification in the hospital gave a garbled version of the name "Amy Wishman" as the person who originally heard Warren mention Kevin Keith as the killer. Because Wishman now denies hearing Keith's name, Keith's evidence undermines the credibility of this police testimony and, therefore, its ability to corroborate the in-court eyewitness account provided by Warren himself.

Even taken without reference to the rest of the record, it is a stretch to say that the fact that another person had a motive and that an eyewitness's original identification may have occurred during a police interview and not independent of it could constitute clear and convincing evidence that no reasonable fact finder could have returned a guilty verdict. Our other cases, to be sure, have described the prima facie requirement as "lenient," *Lott*, 366 F.3d at 433, or "not a difficult showing," *In re Bowling*, 422 F.3d 434, 436 (6th Cir. 2005), but those cases have involved new evidence that went to the heart of a guilt determination or directly contradicted the government's case-in-chief. *See, e.g.*, *McDonald*, 514 F.3d at 547 (key prosecution witness recanted); *Lott*, 366 F.3d at 433 (prosecutor withheld evidence that victim, prior to dying, identified a person of different skin color than defendant). Keith's allegations do not rise to this level and warrant no "additional analysis" to determine whether he meets the statutory requirements. *McDonald*, 514 F.3d at 547. The difference between those cases and this one is critical to why Keith has not made a sufficient showing.

Notwithstanding the dissent's assertion that the new evidence attacks "the strongest evidence presented against Keith," it does not contradict *any* evidence that directly proves guilt. Melton may have had a motive (and a stated intention to carry it out) and the police witness may have testified incorrectly (and so would not be able to corroborate Warren's testimony), but those propositions, taken at full value, do not mean that no reasonable fact finder would find Keith guilty.

Moreover, when "viewed in light of the evidence as a whole," § 2244(b)(2)(B)(ii), Keith's new evidence is particularly lacking. The core of the case, as recounted by this court, against Keith included:

- Eyewitness testimony of the survivor Warren identifying Keith;
- A partial imprint of the license plate made from the snowbank where the getaway car crashed matched the license plate of a car he was known to have access to;
- Eyewitness identification of him as the man driving the getaway car when it crashed;
- A spent bullet cartridge casing matching the ones recovered from the scene of the murders was found where Keith later picked up his girlfriend; and
- Testimony that Keith had been indicted as a result of the drug raid precipitated by the victims' relative.

*See Keith*, 455 F.3d at 666-68.

Keith's new evidence does not contradict any of this case. Combined with other facts known about Melton at the time of trial – that his car is similar to the getaway car, that his build is similar to the killer's, that the victim's seven-year-old daughter identified Melton's brother as the shooter, and that Melton told Chatman when they met at the hospital after the shootings that the killings were motivated by (unspecified) revenge – Keith argues that the evidence of Melton's motive casts doubt on the jury verdict. But Keith had the same revenge motive as Melton and it was he, not Melton, who was identified by two witnesses as being involved in the crime. Indeed, fully crediting all the allegations against Melton at best introduces doubt but it cannot, after any amount of district court analysis, demonstrate by clear and convincing evidence that no reasonable juror could find Keith guilty.

Similarly, the attack on the credibility of the identification at best introduces doubt but does not foreclose Keith's guilt. *Cf. Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) ("[T]his sort of latter-day evidence brought to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed

the heart of [the witness's] account of petitioner's actions."). And even where a witness's initial identification is impliedly suspect, as Keith alleges here, our system of adjudication permits subsequent identifications on the strength of the witness's ability to observe the criminal independent of the circumstances of the first identification. *See Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). Here, notwithstanding Keith's evidence, Warren still would have testified to his identification based on his experience as a victim. The dissent emphasizes that this new evidence strengthens the case that Warren was improperly influenced. We agree that this makes Warren's testimony marginally less credible, but disagree that it is a fatal blow. It attacks only a corroborating witness. Even if the implication of Keith's evidence is accepted, Warren's in-court eyewitness testimony still strongly supports Keith's guilt.

And it bears repeating, neither proposition, if proven by Keith, demonstrates that no reasonable fact finder could find Keith guilty beyond a reasonable doubt. In light of the balance of evidence left uncontroverted by these propositions – the eyewitness placing him at the scene; the partial match of the license plate; and the matching gun casings – Keith has not made the prima facie showing that permits us, under AEDPA, to authorize a second or successive habeas corpus application. Accordingly, we deny Keith's motion.

CLAY, Circuit Judge, dissenting.  Keith moves this Court for an order directing the district court to consider his application for a second or successive habeas petition pursuant to 28 U.S.C. § 2244(b).  We are not being asked to rule on the merits of the habeas corpus petition, and instead are asked to determine whether Keith has made "sufficient allegations of fact together with some documentation that would warrant a fuller exploration of the new evidence in the district court."  *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004).  Considering, as we are required to do, Keith's substantial new evidence together with the lack of physical evidence against Keith, and the weakness of the eyewitness testimony presented at trial, we can and should conclude that the new evidence warrants further exploration.  Consequently, I respectfully dissent.

I.

We can authorize the filing of Keith's application if we determine that Keith has made a "prima facie showing" that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. §§ 2244(b)(2)(B)(ii), (b)(3)(C).

This Court has explained that a "prima facie showing" is not a difficult standard to meet.  *In re McDonald*, 514 F.3d 539, 544 (6th Cir. 2008).  "Prima facie" in this context "means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'"  *Lott*, 366 F.3d at 433 (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).

II.

Because the facts underlying Keith's claim must be viewed in light of the evidence as a whole, the evidence supporting Keith's conviction warrants further discussion.  Keith was convicted of a triple homicide that took place in 1994 and was sentenced to death.  The prosecution's theory of the case was that Keith murdered family members of Rudel Chatman to exact revenge for Chatman's assistance in an investigation that led to a drug trafficking raid and indictments against Keith and members of his family.  Two victims survived the shooting.

The prosecution's star witness at trial was Richard Warren, an adult surviving victim, who selected Keith from a photo lineup and reiterated the identification at trial. The prosecution also presented Nancy Smathers, who testified that on the night of the murders, she heard shots, looked outside her window, observed a large stocky man jump into a car, and observed the car crash into a snow bank. In her first two statements to the police Smathers was unable to identify the assailant, but in her third statement, made after seeing Keith on a television news story, she identified the assailant as Keith. There was also eyewitness testimony from Quanita Reeves, a seven-year-old surviving victim, but Reeves told police that she was shot at by her "daddy's friend, Bruce" and excluded the picture of Keith from a photo lineup.

Keith was also connected to the crime by circumstantial physical evidence. Investigators made a cast of a tire tread and a cast of a partial license plate indentation from the snow bank identified by Smathers. The partial license plate number, "043," matched the last three numbers of a car to which Keith was known to have access. The prosecution presented evidence that prior to the shooting, the car's owner had purchased tires that were "similar in tread design" to the tread in the snow bank. Investigators testified that they had collected spent gun casings from the crime scene, and found a matching casing at the entrance to a General Electric plant where Keith picked up his girlfriend from work on the night of the murders.

The defense challenged the identification made by Warren, presenting evidence that Warren had been improperly influenced and that the identification was inconsistent with other statements he had made. The defense also presented an alibi for Keith and attempted to cast suspicion on the Melton brothers, who had been arrested in a string of pharmacy burglaries and who had told Rudel Chatman that his family had been shot because of Chatman's snitching. Finally, the defense challenged the testimony of Smathers, arguing that her description of the assailant was consistent with Rodney Melton, and submitting evidence that the license plate "043" matched the first three numbers of a license plate registered to Melton. At the conclusion of the jury trial, Keith was convicted of the murders and sentenced to death.

III.

As the basis for his application, Keith submits new evidence that he alleges was withheld by the prosecution in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This evidence falls into two categories: new evidence that supports a contention that Rodney Melton committed the murders, and new evidence that relates to the identification made by eyewitness Richard Warren.

A.

First, Keith presents new evidence that implicates Rodney Melton in the murders. Although the majority dismisses Keith's submissions as evidence that "could imply [that Melton had] a motive to kill people close to Chatman[,]" slip op. at 5, the evidence goes well beyond this. The new evidence includes: (1) evidence from a file in another investigation in which an informant told police that, two weeks before the shooting, Rodney Melton stated that "he had been paid $15,000 to cripple the man who was responsible for the raids in Crestline, Ohio last week"; (2) evidence that police conducted an interview in which Melton's accomplice in the pharmacy burglary ring told the police that Melton had stated that he would kill anyone who snitched on him and that he was paid to kill Chatman; (3) evidence that two investigators in Keith's case were part of the interview of Melton's accomplice but that Keith was never informed of the interview; and (4) evidence that it was Melton's habit to wear a mask like the one described by witnesses to the shooting.

This Court must consider this new evidence "in light of the evidence as a whole" as required by 28 U.S.C. § 2244(b)(2)(B)(ii). *See also Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005) (explaining that *Brady* claims must be considered in relation to the evidence as a whole). Previously-existing evidence that implicates Melton includes:

- evidence that the partial licence plate number obtained from the snow bank identified by Smathers, "043," also matches the first three numbers of a license plate registered to Melton;
- evidence that Melton owned and drove a yellow Chevy Impala, which matched Smathers' description of a "real light" colored car that was white, cream, or light yellow;[1]

---

[1]The car the state claimed that Keith drove was described as green or gray.

- evidence that defense counsel had been contacted by a relative of Rodney Melton, who told him that Rodney "is in on the killings";
- evidence that Melton appeared at the crime scene, knew the type of bullets involved in the killings, and "made sure to affirmatively tell" the police that his car, which matched the description of the car given by Smathers, was broken down that night; and
- evidence that Quanita Reeves told police that she was shot by her "daddy's friend Bruce."

Notably, "Bruce" is the name of the brother of Rodney Melton, and the defense argued that seven-year-old Reeves confused the brothers, both of whom were friends with her father, and that Reeves had actually attempted to identify Rodney Melton. When the new evidence regarding Melton's statements is considered "in light of the evidence as a whole," the defense has a strong argument that Melton, and not Keith, committed the murders. The new evidence goes beyond "imply[ing] a motive to kill people close to Chatman" and establishes that, two weeks before the murders, Melton told a presumably unbiased police informant that he would "kill anyone who snitched on him" and that he had been paid to do so.

### B.

Keith also submits new evidence that, contrary to the testimony of a police captain, the state's primary eyewitness did not identify Keith as the shooter to a nurse.

An understanding of this evidence requires a bit of context. At Keith's trial, Captain John Stanley testified that a nurse named "Amy Gimmets" called him and stated that Warren, a survivor of the shooting, had gained consciousness after surgery and identified Keith as the shooter. The alleged statement would have taken place before Warren was contacted by police investigators, and undermined allegations by the defense that Warren was improperly influenced. The prosecution did not call the nurse at trial and the defense was unable to locate her.

Keith now alleges that a report prepared by Captain Stanley states that the nurse who called him regarding Warren's identification of Keith was "Amy Wishman" and not "Amy Gimmets." Based on this new information, defense counsel located the nurse,

who provided an affidavit stating that: (1) she was the nurse who treated Warren after his surgery; (2) she does recall calling Captain Stanley after Warren could speak; (3) that she never told the captain that Warren had given her a name for the shooter; and (4) that Warren had never told her the shooter's name.

This new evidence is significant, most notably because the nurse's alleged statement was strong corroboration for Warren's otherwise questionable identification. At trial, Warren's identification of Keith had been challenged by Warren's previous statements that he did not know who shot him, by his statements that the shooter was wearing a mask, by another eyewitness's exclusion of Keith as the shooter, and by evidence that Warren had been given Keith's name by officers.[2] The defense used this evidence to argue that Warren had been improperly influenced by police officers.

However, the otherwise compelling argument of improper influence was directly undermined by Captain Stanley's testimony that Warren had provided Keith's name to his nurse *before* he had spoken to any law enforcement officials. The nurse's statement, offered through Stanley, bolstered Warren's otherwise questionable identification, and could likely have convinced the jury that the identification was reliable. *See Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007) (discussing the importance of testimony that bolsters the testimony of other witnesses who had been impeached). In this light, new evidence that Warren had not identified Keith to the nurse was critical.

C.

The majority opinion assumes, without deciding, that the evidence could not have been previously discovered and that it would demonstrate constitutional violations, but concludes that the evidence does not go to the ultimate question of guilt. Slip op. at 4. Because it is the contested issue, I have also focused on the strength of the evidence.

---

[2]More specifically, at trial, the defense presented evidence that Warren had initially told four different witnesses, including a police officer, that he did not know who shot him, and that he had told witnesses that the shooter was wearing a mask. There was also evidence that the police considered Keith a suspect very early in the investigation, that two officers brought Keith's name up at the murder scene, and that Keith's name had been provided to Warren prior to his identification. Captain Stanley admitted to providing Warren with Keith's name, but claimed that he did so only after nurse "Amy Gimmets" had informed him that Warren had provided Keith's name.

However, it should be noted that Keith does make a prima facie showing of a *Brady* violation.

The *Brady* Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Supreme Court has since held that material, exculpatory evidence must be disclosed even absent the defendant's request. *See United States v. Agurs*, 427 U.S. 97 (1976). When determining whether the withheld information was material and therefore prejudicial, this Court must consider it in light of the evidence available for trial that supports the petitioner's conviction. *See Towns*, 395 F.3d at 260.

Keith alleges that the evidence he presents was discovered in police files and was known to investigators involved in the investigation of Keith's case. These allegations, if proven, could establish that the evidence was newly discovered and either intentionally or unintentionally suppressed by the state. Moreover, in the course of making a prima facie showing that the new evidence, if proven, is sufficient to establish that no reasonable factfinder would find Keith guilty of murder pursuant to 28 U.S.C. §§ 2244(b)(2)(B)(ii) and (b)(3)(C), Keith also presents a prima facie case that the evidence was material and favorable to him. Again, Keith need not prove this; he need only present sufficient allegations of fact together with some documentation that would warrant a fuller exploration of the new evidence in the district court. *Lott*, 366 F.3d at 433.

IV.

In sum, the strongest evidence presented against Keith at trial was Warren's identification of Keith and Keith's motive to murder Rudel Chatman. If proven, Keith's new evidence would allow the defense to properly challenge Warren's questionable identification, and it would establish that Melton, who had the same connection to Rudel Chatman, had stated an intent to kill anyone who "snitched," and had told a potential witness that he had been paid to kill Chatman.

Keith has made "sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *Id.* If the newly submitted evidence were proven, any reasonable factfinder would have serious, and reasonable, doubt as to whether it was Keith or Melton who committed the murders. Under these circumstances, he could establish by clear and convincing evidence that a *reasonable* factfinder could not find Keith guilty of three counts of murder. *See* 28 USCS § 2244(b)(2)(B)(ii)*; see also Schlup v. Delo*, 513 U.S. 298, 329 (1995) ("The word "reasonable" . . . is not without meaning. It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt."). Following the appropriate legal standard and taking Keith's new evidence into account, I conclude that Keith meets his prima facie burden and would grant Keith's application to file a successive habeas petition.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green
_____
                Clerk