*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0024p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

*In re* AMIRA SALEM,

      *Movant-Petitioner.*

No. 09-1819

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-12157—Marianne O. Battani, District Judge.

Decided and Filed: February 1, 2011

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

_____

**OPINION**

_____

SILER, Circuit Judge. Petitioner Amira Salem, a pro se Michigan prisoner, filed a second habeas petition, asserting that the state court's third entrapment hearing was unconstitutional and that she was entrapped as a matter of law in violation of due process. The district court deemed the petition "second or successive" and transferred the case to this court. Now pending before the court is Salem's motion to remand, or alternatively, to authorize the district court to consider a "second or successive" habeas petition. The state declined to file a response. Because Salem's application is not "second or successive" within the meaning of § 2244 with respect to the entrapment claim, we remand this claim to the district court.

I.

Salem was convicted of conspiracy to deliver and delivery of heroin. The convictions arose out of the sale of 250 grams of heroin to an undercover police officer. This drug sale was the culmination of efforts by a confidential government informant,

1

Joe Issa. Before her trial, Salem sought to have the charges dismissed on the basis of entrapment. An entrapment hearing was held, but Issa did not testify based on the state's assertion of an informant's privilege. Instead, the trial court conducted an in camera examination of Issa and concluded that Salem was not entrapped. The Michigan Court of Appeals held that this procedure was a Confrontation Clause violation and remanded for a new entrapment hearing. *People v. Salem*, Nos. 206323, 205746, 2001 WL 789538 (Mich. Ct. App. Jan. 12, 2001) (per curiam).

A second entrapment hearing was held, during which Issa was permitted to testify in a closed courtroom. The trial court again found that Salem was not entrapped. On appeal, Salem alleged, *inter alia*, that the entrapment hearing violated her right to a public trial, that she was entrapped, and that her counsel was ineffective. The Michigan Court of Appeals denied Salem's claims, *People v. Salem*, Nos. 205746, 206323, 2001 WL 1029650 (Mich. Ct. App. Sept. 7, 2001) (per curiam), and the Michigan Supreme Court denied Salem's delayed application for leave to appeal, *People v. Salem*, 649 N.W.2d 80 (Mich. 2002) (table).

Salem filed a habeas petition in the United States District Court for the Eastern District of Michigan, asserting that the closed courtroom violated her right to a public trial, that she was entrapped as a matter of law in violation of due process, and that her counsel was ineffective. The district court denied Salem's ineffective assistance of counsel claim, but found that Salem's right to a public trial was violated by the closed courtroom during her second entrapment hearing. *Salem v. Yukins*, 414 F. Supp. 2d 687 (E.D. Mich. 2006). Thus, the district court conditionally granted the petition for habeas corpus, directing the state court to conduct a new, public entrapment hearing within 90 days. *Id.* at 700. It also provided that Salem "may petition th[e] Court for issuance of an unconditional writ" if "the trial court fails to conduct an entrapment hearing or, if necessary, fails to afford Petitioner a new trial." *Id.* With respect to Salem's entrapment claim, the district court declined to address the claim "at this time" based upon its conclusion that a "new entrapment hearing is necessary" and "the possibility that

additional or different testimony relevant to the entrapment claim may be adduced at the hearing." *Id.* at 698.

The trial court conducted a third entrapment hearing. Over Salem's objections, the trial court permitted only Issa to testify, and it relied on the transcripts from the previous hearing for the other witnesses. Again it found that Salem was not entrapped.

Subsequently, Salem filed a motion for issuance of an unconditional writ of habeas corpus, seeking release because the trial court did not comply with the requirements of the conditional writ and did not afford Salem a "new" entrapment hearing. The district court concluded that the trial court "complied substantially with the Court's Conditional Writ" and denied the motion. *Salem v. Yukins*, No. 03-74315, 2006 WL 3500629, at *3 (E.D. Mich. Dec. 4, 2006).

In 2008, the Michigan Court of Appeals denied Salem's delayed application for leave to appeal "for lack of merit in the grounds presented," and the Michigan Supreme Court also denied Salem's application for leave to appeal.

In 2009, Salem filed the habeas petition that is now at issue, alleging two claims: (1) the procedure in the third entrapment hearing violated her constitutional rights and (2) she was entrapped as a matter of law. The district court construed the petition as "second or successive" and transferred the case to this court. It reasoned that Salem's claim challenging the constitutionality of the third entrapment hearing was raised and adjudicated in the first petition and thus the instant petition was successive. Regarding Salem's entrapment claim, the district court recognized that it was not previously adjudicated on the merits, but nonetheless found that it was successive because it was "presented" in the first petition.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress  established a "stringent set of procedures" that a habeas petitioner "must follow if he wishes to file a 'second or successive' habeas corpus application." *Burton v. Stewart*, 549 U.S. 147, 152 (2007) (citing 28 U.S.C. § 2244(b)(1)). This "gatekeeping

mechanism" requires a state prisoner seeking to file a "second or successive" application to move "in the appropriate court of appeals for an order directing the district court to consider his application.*"   Stewart v. Martinez-Villareal*, 523 U.S. 637, 641 (1998) (internal quotation marks omitted); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006) (citing 28 U.S.C. § 2244(b)(3)(A)). A claim "presented" in a prior application will be dismissed.  28 U.S.C. § 2244(b)(1).  A claim not "presented" in a prior application will be dismissed unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

"The phrase 'second or successive' is not self-defining." *Panetti v. Quarterman*, 551 U.S. 930, 943 (2007).   Instead, it is a "term of art" that is "given substance" by the Supreme Court's habeas cases.  *Slack v. McDaniel*, 529 U.S. 473, 486 (2000).  The Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." *Panetti*, 551 U.S. at 944 (citing *Slack*, 529 U.S. at 487); *see also In re Bowen*, 436 F.3d at 704 ("The Supreme Court has made clear that not every numerically second petition is 'second or successive' for purposes of AEDPA."); *In re Cook*, 215 F.3d 606, 607 (6th Cir. 2000) ("[T]he fact that he has already filed one § 2254 application is not necessarily determinative of whether the current attempt is a 'second or successive' application." (internal punctuation omitted)).

For instance, in *Stewart v. Martinez-Villareal*, the Supreme Court held that a subsequent petition was not "second or successive" when the claim had been raised in the initial petition but dismissed as unripe, even though the other claims presented in the initial petition were decided on the merits. 523 U.S. at 643-46. Martinez-Villareal filed a habeas petition raising a series of claims, including a *Ford* claim alleging that he was not competent to be executed. *Id.* at 640. The district court dismissed the *Ford* claim as premature because his execution had not been scheduled, but the district court decided the merits of the remaining claims. *Id.* When a warrant was issued for his execution, which ripened his *Ford* claim, he initiated a state proceeding and then moved to reopen his *Ford* claim. *Id.* The Court concluded that his "*Ford* claim was not a 'second or successive' petition under § 2244(b)," reasoning:

> This may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b). There was only one application for habeas relief, and the District Court ruled (or should have ruled) on each claim at the time it became ripe. Respondent was entitled to an adjudication of all of the claims presented in his earlier, undoubtedly reviewable, application for federal habeas relief. The Court of Appeals was therefore correct in holding that respondent was not required to get authorization to file a "second or successive" application before his *Ford* claim could be heard.

*Id.* at 643-44. The Court analogized the petitioner's *Ford* claim to a claim that was previously dismissed for failure to exhaust because "in both situations, the habeas petitioner does not receive an adjudication of his claim." *Id.* at 645. It was concerned that a contrary conclusion "would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Id.*

Salem's entrapment claim is similar to Martinez-Villareal's *Ford* claim because both were presented in the initial habeas petition, yet neither was ripe for review. The entrapment claim could only be properly assessed based on evidence from a constitutional hearing, which had yet to occur. Because the district court found that the

prior entrapment hearing violated the Constitution and there was a possibility that additional evidence would be adduced at the new hearing, it declined to address the entrapment claim "at this time." *Salem*, 414 F. Supp. 2d at 698. By entering a conditional writ, which was a final order, *see Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006), and not ruling on the entrapment claim, it in essence dismissed that claim without prejudice because it was not ripe. Like Martinez-Villareal, Salem never received an adjudication of her claim.

After the third entrapment hearing, Salem's entrapment claim was no longer premature from a factual standpoint, but it was still not exhausted. When Salem exhausted her state court remedies, she returned to federal court. Although this was Salem's second time seeking relief from the federal courts on her entrapment claim, "this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b)." *Martinez-Villareal*, 523 U.S. at 643. Based on the reasoning in *Martinez-Villareal*, there "was only one application for habeas relief" and the district court should rule on the claim when it is no longer premature. *Id.* Salem's claim was not ripe and exhausted until she returned to federal court with the instant petition. It should therefore be treated as a continuation of her "earlier, undoubtedly reviewable, application for federal habeas relief." *Id.* Accordingly, Salem is not required to get authorization to file a "second or successive" application before her entrapment claim can be heard.

The fact that Salem filed a motion for an unconditional writ does not alter the result. Her entrapment claim was not properly before the district court when she filed the motion for an unconditional writ as she had not exhausted this claim. *See Pitchess v. Davis*, 421 U.S. 482 (1975) (per curiam). It could be argued that, by seeking the unconditional writ solely on the public trial claim, she was subjecting her entrapment claim to the "second or successive" analysis, similar to the subsequent claims of a petitioner who files a mixed petition and then decides to proceed only with exhausted claims. *See Burton*, 549 U.S. at 154. However, this situation is different. Salem was merely complying with the district court's conditional writ, which stated that Salem

"may petition this Court for issuance of an unconditional writ" in two circumstances: (1) the state failed to conduct an entrapment hearing or (2) the state failed to afford her a new trial, if necessary. *Salem*, 414 F. Supp. 2d at 700. After issuance of the conditional writ, the district court's jurisdiction was limited to ascertaining whether the state complied. *See Gentry*, 456 F.3d at 692. Moreover, it would be inefficient to require Salem to wait a year and a half to seek an unconditional writ while her entrapment claims were being considered by the state courts, only to potentially find out later that the district court determined that the third entrapment hearing did not pass muster.

In finding that the entrapment claim was presented in a "second or successive" application, the district court relied on *Wainwright v. Norris*, 121 F.3d 339 (8th Cir. 1997). There, the petitioner brought a *Dawson* claim and a due process claim. *Id.* at 340. The district court granted petitioner relief on the *Dawson* claim and did not review petitioner's due process claim. *Id.* On appeal, the Eighth Circuit reversed the district court's grant of relief on the *Dawson* claim. *Id.* The petitioner then filed a second habeas petition again bringing the due process claim and sought an order of authorization from the Eighth Circuit. *Id.* The Eighth Circuit concluded that, because the petitioner presented this claim in his first habeas petition, § 2244(b)(1) prevented him from bringing it again in his second petition. *Id.* The court noted that AEDPA "precludes any claim 'presented' in the first action, rather than 'adjudicated' 'on the merits' in the first action, as the pre-Act version of § 2244(b) provided." *Id.* The court also referenced the "familiar rule of trial practice" that places on the litigant's shoulders "the responsibility to obtain a ruling on any issue left unaddressed by the district court" and faulted the petitioner for not bringing the "overlooked" due process claim to the appellate court's attention. *Id.* at 340-41. Thus, the court denied his motion for authorization. *Id.* at 341.

Salem's entrapment claim is different than Wainwright's due process claim. The district court did not overlook Salem's claim, but instead decided it was premature because it was intertwined with the public trial claim on which it was granting relief.

Wainwright's due process claim, on the other hand, was not premature. Moreover, unlike Wainwright, who could have petitioned the court to render a decision on his due process claim, it would have been futile for Salem to have asserted her entrapment claim in her motion for an unconditional writ. More fundamentally, the *Wainwright* court was interpreting AEDPA in January 2007, soon after it became law. While the *Wainwright* court's interpretation of § 2244 was certainly reasonable at the time, the plain meaning of the statute did not carry the day at the Supreme Court. *Martinez-Villareal*, 523 U.S. at 646 (Scalia, J., dissenting) ("And it is impossible to conceive of language that more clearly precludes respondent's renewed competency-to-be-executed claim than the written law before us here: a 'claim *presented* in a second or successive habeas corpus application . . . that was *presented* in a prior application shall be dismissed.'" (quoting 28 U.S.C. § 2244(b)(1)); *id.* at 649 (Thomas, J., dissenting) (stating that the "reasons offered by the Court for disregarding the plain language of the statute are unpersuasive"). Subsequent Supreme Court decisions have further defined what it means for an application to be "second or successive." Salem's application does not fall within the Supreme Court's definition of "second or successive" because the entrapment claim was raised in the initial petition, yet not decided because it was premature. *Id.* (majority opinion).

Regarding Salem's claim challenging the third entrapment hearing, it is in essence the claim that the district court decided when denying her motion for an unconditional writ. Pursuant to § 2244(b)(1), we deny her request for an order of authorization as to this claim.

## III.

Salem's motion to remand is **GRANTED** as to her entrapment claim. Salem's motion is **DENIED** with respect to her claim challenging the constitutionality of her third entrapment hearing. This case is **REMANDED** to the district court for further proceedings in light of this decision.