**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 18a0612n.06**

No. 02-4145

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 05, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID WAYNE ALLEN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| BETTY MITCHELL, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SILER, MOORE, and BUSH, Circuit Judges.

David Allen, an Ohio prisoner under sentence of death, moves to remand his appeal with leave to amend his original petition for a writ of habeas corpus to include a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and a claim of ineffective assistance of counsel. The *Brady* claim is based on DNA evidence developed in state court after the denial of Allen's habeas petition. Allen has not explained the basis for his proposed ineffective assistance of counsel claim. He has, therefore, forfeited that issue. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).

Allen was convicted of aggravated robbery and aggravated murder with death-penalty specifications in 1991. Chloie English was found stabbed, beaten, and strangled to death in her home. Allen's thumbprint was found on the inside of one of the lenses of English's glasses, cigarette butts consistent with Allen's brand (Dorals) and saliva (type O secretor) were found in English's trash can, and Allen knew English through a prison ministry program. The Ohio Court of Appeals affirmed Allen's convictions and sentence in 1993, *State v. Allen*, No. 62275, 1993 WL 366976 (Ohio Ct. App. Sept. 9, 1993), and the Ohio Supreme Court affirmed in 1995, *State v.*

*Allen*, 653 N.E.2d 675 (Ohio 1995). Allen's efforts at post-conviction relief in the Ohio courts were unsuccessful.

Allen filed a petition for a writ of habeas corpus in 1999. The district court denied the petition in 2002, and granted Allen a certificate of appealability as to his claim that a biased juror served on the jury. We denied Allen's motion to expand the certificate of appealability and directed that Allen's appeal proceed on the claim certified by the district court. But in February 2006, Allen's state trial court granted his motion for DNA testing of blood found on his jacket and on gloves found near the victim. Consequently, in April 2006, Allen filed a motion asking us to hold briefing in abeyance pending completion of that DNA analysis. We granted the motion, and, for eleven years, Allen filed periodic status reports advising us of the state-court proceedings.

The state court ordered additional DNA testing in May 2011. Based on the results of the DNA testing, Allen filed a supplemental motion for a new trial and to set aside the death-penalty determination in November 2011. Allen's motion relied on Ohio Rule of Criminal Procedure 33 and on *Brady*. He alleged that (1) the state failed to disclose blood-stained gloves found at the scene of the murder and (2) the state failed to disclose a police report in which the victim's neighbor said she saw a black male approach the victim's home on January 23 or 24, 1991. (English was last seen alive on January 24 and was found dead on January 25.) The trial court denied the motion without a hearing, and the Ohio Court of Appeals affirmed. *State v. Allen*, No. 103492, 2016 WL 5630980, at *8 (Ohio Ct. App. Sept. 29, 2016).

The Ohio Court of Appeals summarized the results of the DNA testing of the gloves as follows:

> (1) due to a low amount of male DNA and a possible mixture, no determination could be made regarding the DNA profile obtained from the exterior of the right glove; (2) a DNA mixture of at least two males was detected in the interior of the right glove, but due to the low amount and possible mixture, no determination could be made as to whether Allen was a contributor; (3) male DNA was not detected on the exterior of the left glove; and (4) the interior of the left glove produced a DNA mixture of at least two males. Allen was excluded as a contributor to the DNA recovered from the interior of the left glove.

*Allen*, 2016 WL 5630980, at \*4. The Ohio Court of Appeals held that Allen had not demonstrated a *Brady* violation because Allen's trial counsel had the opportunity to learn of the evidence before and during the trial. *Id.* at \*5. The court also held that the trial court did not abuse its discretion when it denied Allen's motion for a new trial because there was not a strong probability that the glove DNA evidence would have changed the result of the trial. *Id.* at \*5. Finally, the Ohio Court of Appeals rejected Allen's argument that other evidence supported his motion for a new trial. *Id.* at \*6.

Allen asks us for authorization to amend the *Brady* claim in his habeas petition. With only limited exception not applicable here, a second-in-time habeas application that challenges the same state-court judgment as the first habeas application is second or successive. *Magwood v. Patterson*, 561 U.S. 320, 337 (2010).[1] And, "a motion to amend that seeks to raise habeas claims *is* a second or successive habeas petition when that motion is filed after the petitioner has appealed the district court's denial of his original habeas petition or after the time for the petitioner to do so has expired." *Moreland v. Robinson*, 813 F.3d 315, 324 (6th Cir. 2016) (emphasis added); *see*

---

[1] The circumstances in which a second-filed petition does not count as "second or successive" concern when a ground for relief in that petition was in fact raised in the first petition but not decided on the merits. For example, "in *Stewart v. Martinez-Villareal*, [523 U.S. 637 (1998),] the Supreme Court held that a subsequent petition was not 'second or successive' when the claim had been raised in the initial petition but dismissed as unripe, even though the other claims presented in the initial petition were decided on the merits." *In re Salem*, 631 F.3d 809, 812 (6th Cir. 2011) (citing *Stewart*, 523 U.S. at 643–46). For example, in *In re Salem*, the claim at issue, entrapment, was "presented in the initial habeas petition" but "was unripe for review." *Id.* at 813. By contrast, Allen's *Brady* claim based on the glove DNA evidence was not raised in his first federal habeas petition; therefore, his motion is properly deemed a second or successive petition. The dissent points to *Panetti v. Quaterman*, 551 U.S. 930 (2007) for the proposition that "claims may be raised for the first time in a second-in-time petition without rendering the petition second or successive." Dissent at 6. However, the dissent's application of *Panetti* stretches its narrow holding, which is premised on the Eighth Amendment's prohibition of carrying out a sentence of death upon a prisoner who is insane. *See Panetti*, 551 U.S. at 934 (citing *Ford v. Wainwright*, 477 U.S. 399, 409–10 (1986)). The *Panetti* Court held that "*Ford*-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first habeas petition." *Id.* at 943. Thus, to escape § 2244's stringent requirements, each prisoner would have to file an unripe (and perhaps meritless) *Ford* claim in every § 2254 petition in order to preserve the claim for the future, should a prisoner later experience competency issues. The *Panetti* Court found that such distortion for *Ford*-based competency claims is not warranted. Therefore, based on the *Ford* claim's unripeness at the time of the first habeas petition, the Court held that "[t]he statutory bar on 'second or successive' applications does not apply . . . ." *Id.* at 947. Here, by contrast, Allen does not contend that the glove DNA testing claim became ripe after the time expired for him to raise it as an issue in his original habeas petition, and similar constitutional concerns as those in *Panetti* are not at issue.

*also Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005).[2] Under the Antiterrorism and Effective Death Penalty Act (AEDPA), then, Allen must clear a high hurdle before we may authorize the district court to entertain his motion to amend: as Allen recognizes, Mot. to Remand at 8, he must make a prima facie showing of (1) a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, or (2) newly discovered evidence that could not have been discovered previously through the exercise of due diligence and which, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2), (b)(3)(C). A prima facie showing consists of sufficient allegations of fact together with documentation that would "warrant a fuller exploration in the district court." *Keith v. Bobby*, 551 F.3d 555, 557 (6th Cir. 2009) (quoting *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004)).

The claims in Allen's second or successive petition do not meet the criteria of 28 U.S.C. § 2244(b). They do not rely on a new rule of constitutional law made retroactive by the Supreme Court. *See In re Campbell*, 874 F.3d 454, 467 (6th Cir.), *cert. denied*, 138 S. Ct. 466 (2017). Allen's *Brady* claim does rely on newly discovered evidence that could not have been discovered previously through the exercise of due diligence. The gloves themselves were apparent in a videotape of the crime scene, but the DNA analysis obtained through the proceedings in state court was unavailable at the time of his trial in 1991; indeed, it was not until 1992 that the Supreme Court of Ohio first recognized the admissibility of DNA evidence. *See State v. Pierce*, 597 N.E.2d

---

[2] The dissent seeks to distinguish *Moreland* and *Post* on the basis that "Allen did not file a motion to amend while his initial habeas appeal was actively pending, as in *Moreland* and *Post*, but instead moved to remand after his appeal had been held in abeyance so that Allen could pursue the very arguments in state court that he now seeks to raise on federal habeas review." Dissent at 8. But, there is nothing in this court's order holding the habeas appeal in abeyance to suggest it was intended to deem or allow the federal petition to be amended to add the glove DNA claim or that this court's suspension of its proceedings while Allen pursued state-court habeas relief on this claim changed the scope of his federal petition in any way. Rather, we held the habeas appeal in abeyance for the simple reason that if Allen had prevailed on the glove DNA claim stated in his state-court petition, then that would have obviated the need for this court to rule on the merits of the appeal of the federal petition. The abeyance did not change the fact that this original federal petition did not include the glove DNA claim, and therefore Allen's new assertion of that claim in federal court as part of the motion to remand constitutes a second or successive petition.

107, 112 (Ohio 1992). Still, Allen has not presented either a prima facie case of constitutional error, or proof sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty. *See* 28 U.S.C. § 2244(b)(2), (b)(3)(C); *Magwood*, 561 U.S. at 330. At most, the DNA analysis reveals that multiple men had, at some point, left DNA in gloves found near English's body. A reasonable factfinder could take this evidence to suggest that, contrary to the prosecution's theory of the case, two male perpetrators collaborated in English's demise. But, weighed against the damning evidence of Allen's thumbprint on English's glasses together with the other evidence adduced at trial, this DNA analysis falls far short of AEDPA's stringent requirement for clear and convincing evidence that *no* reasonable factfinder would have adjudged Allen guilty of English's murder. The other evidence included, for example, that English was killed by someone she knew because the doors to her house were found unlocked, she did not open the door to strangers, and there were no signs of forced entry. English knew Allen through a prison ministry program. Doral brand cigarette butts with saliva from a type O secretor were found in English's trash. Allen smoked Dorals, is a type O secretor, and English did not smoke. The coroner put English's time of death at between midnight and six a.m. on January 25. A bus driver remembered picking up Allen a little after six in the morning on January 25 near English's home. *Allen*, 653 N.E.2d at 682.

Thus, "viewed in light of the evidence as a whole," 28 U.S.C. § 2244(b)(2), the presence of DNA on the gloves from at least one man other than Allen does not warrant fuller exploration in the district court. *See Keith*, 551 F.3d at 557.

For the foregoing reasons, Allen's motion to remand with leave to amend his petition is **DENIED**.

**KAREN NELSON MOORE, Circuit Judge, dissenting**.  If Allen's motion for remand were a second-or-successive petition for habeas relief, I would agree with the majority's conclusion that Allen's claims have failed to satisfy the stringent criteria set forth in 28 U.S.C. § 2244(b).  Because I do not, however, agree that Allen's motion is second or successive under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), I must respectfully dissent.

The majority offers two reasons for treating Allen's motion to remand as a second-or-successive petition under AEDPA.  First, the majority suggests that the only second-in-time petitions that do "not count as 'second or successive'" are those where "a ground for relief in [the second] petition was in fact raised in the first petition but not decided on the merits."  Maj. at 3 n.1.  The Supreme Court has long recognized, however, that claims may be raised for the first time in a second-in-time petition without rendering the petition second or successive under AEDPA.  In *Panetti v. Quarterman*, 551 U.S. 930 (2007), the Supreme Court considered how to categorize a petitioner's second-in-time petition that raised a competency claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), given that the petitioner's "first habeas application, which was fully and finally adjudicated on the merits, [had] failed to raise a *Ford* claim."  *Id.* at 942 (citation and quotation marks omitted).  The *Panetti* Court held that the petitioner's second-in-time petition should not be treated as second or successive, notwithstanding the petitioner's failure to raise a *Ford* claim in his first petition, because the petitioner filed his "*Ford*-based incompetency claim . . . as soon as that claim [became] ripe."  *Id.* at 945.  In light of *Panetti*, the majority's suggestion that second-in-time petitions can never include newly raised claims is incorrect.

The majority ignores the fact that *Panetti* expanded upon *Martinez-Villareal* and, moreover, that we have not limited *Martinez-Villareal* to *Ford* claims.  *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 643–46 (1998) (holding that a *Ford* claim, raised for the second time after

petitioner's first claim was dismissed as premature, was not a "second or successive" petition under AEDPA); *In re Salem*, 631 F.3d 809, 813 (6th Cir. 2011) (applying *Martinez-Villareal* to an entrapment claim). There is no good reason to so limit *Panetti*. Indeed, one reading the majority's take on *Panetti* might (mistakenly) think that the *Panetti* dissent was actually the opinion of the Court. *Compare* Maj. at 3 n.1 (describing *Panetti* as "narrow" and "premised on [*Ford* claims].""), *and id.* ("By contrast, Allen's *Brady* claim . . . was not raised in his first federal habeas petition; therefore, his motion is properly deemed a second or successive petition."), *with Panetti*, 551 U.S. at 968 (Thomas, J., dissenting) ("Today's decision thus stands only for the proposition that *Ford* claims somehow deserve a special . . . exemption from [AEDPA's] plain import."), *and id.* at 966 (Thomas, J., dissenting) ("In [*Martinez-Villareal*], however, the applicant had raised a *Ford* claim in his initial habeas application."). Looking to the Court's majority opinion in *Panetti*, however, reveals that the Court expanded *Martinez-Villareal* because, despite the "force" of the argument that § 2244 (and precedent) foreclosed an adjudication of petitioner's previously-unraised claim, that argument raised concerns. *Panetti*, 551 U.S. at 943. Here, treating Allen's *Brady* claim as second or successive would incentivize state prosecutors to withhold materially exculpatory evidence until after a petitioner exhausts his initial federal habeas claims; and, as explained below, foreclosing adjudication unnecessarily restricts federal habeas review of *Brady* violations. *Cf. In re Salem*, 631 F.3d at 813 (citing *Martinez-Villareal*, 523 U.S. at 645). These concerns justify applying *Panetti* in this case so that Allen can receive an adjudication of his claim.

Second, the majority notes that "a motion to amend that seeks to raise habeas claims *is* a second or successive habeas petition when that motion is filed after the petitioner has appealed the district court's denial of his original habeas petition or after the time for the petitioner to do so has expired." Maj. at 3 (quoting *Moreland v. Robinson*, 813 F.3d 315, 324 (6th Cir. 2016)). The rule

announced in *Moreland* is derived from *Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005), in which we held that a district court could not grant a petitioner's Rule 60(b) motion to vacate its order dismissing the petitioner's initial habeas petition unless the motion satisfied the requirements for filing a second-or-successive petition under AEDPA because the petitioner had already initiated an appeal of the district court's order, and the claims raised in the Rule 60(b) sounded in habeas rather than Rule 60(b) grounds for relief. While I recognize *Moreland*'s and *Post*'s precedential value, I would treat both cases as distinguishable. Here, Allen did not file a motion to amend while his initial habeas appeal was actively pending, as in *Moreland* and *Post*, but instead moved to remand after his appeal had been held in abeyance so that Allen could pursue the very arguments in state court that he now seeks to raise on federal habeas review. We have previously treated the possibility that new DNA tests would lead to "further state-court action for which this court should wait" as a factor weighing in favor of granting a defendant's motion to stay and hold in abeyance a federal habeas appeal. *See Hodge v. Haeberlin*, 579 F.3d 627, 637 (6th Cir. 2009). Such reasoning makes sense and is reconcilable with our earlier holding in *Post* only if new claims arising out of the state-court action would not be treated as second or successive once the stay were lifted. In other words, if a petitioner must satisfy AEDPA's gatekeeping provisions regardless of whether his initial habeas claims were stayed or adjudicated, then there would be little point in staying the initial appeal. I therefore would hold that *Post*'s and *Moreland*'s rule does not apply to cases, like this one, where the federal habeas appeal was held in abeyance pending the resolution of additional state-court proceedings. To my knowledge, no precedent precludes applying *Moreland* and *Post* in this way.

The majority posits that we might want to grant stays in such circumstances because there would ultimately be no need for a federal court to decide a petitioner's federal habeas petition if

the state courts instead grant relief on the state-court petition. *See* Maj. at 4 n.2. This may explain why we, as a federal appellate court, might wish to delay consideration of Allen's federal habeas petition. But the majority's hypothesis does not explain why a habeas petitioner would seek to stay and hold in abeyance a federal habeas appeal, as Allen did here. From Allen's perspective, he was better off having us decide whether he is entitled to federal habeas relief sooner rather than later if he could not bypass AEDPA's second-or-successive gatekeeping requirements by staying his federal appeal. When we recognized in *Hodge* that the possibility of further state-court action counsels in favor of granting a *petitioner's request* to stay a federal habeas appeal, we necessarily also recognized that federal habeas appellants have something to gain by requesting a stay in their federal habeas appeals. *See Hodge*, 579 F.3d at 637. Here, that "something" is the opportunity to have a federal appellate court review whether the state courts' rejection of Allen's *Brady* claim means that Allen is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the majority's reasoning, the state courts' resolution of Allen's *Brady* claim—even if absolutely wrong—can never be reviewed by any federal tribunal unless Allen can demonstrate by clear-and-convincing evidence that, but for the *Brady* violation, no reasonable factfinder would have found him guilty. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). This is precisely the sort of "far reaching and seemingly perverse" result the Supreme Court has twice extoled us to avoid. *Panetti*, 551 U.S. at 943 (quoting *Martinez-Villareal*, 523 U.S. at 644).

Because the majority disagrees, I respectfully dissent.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk